## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.*,[1]<br><br>      Remaining Debtors.<br>―――――――――――――――――――――<br>MICHAEL GOLDBERG, as Liquidating Trustee of the Woodbridge Liquidation Trust, successor in interest to the estates of WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.*,<br><br>      Plaintiff,<br><br>  v.<br><br>IRA SERVICES TRUST COMPANY, CUSTODIAN FOR THE BENEFIT OF JAMES C. CHANG; JAMES C. CHANG,<br><br>      Defendants. | Chapter 11<br><br>Case No. 17-12560 (BLS)<br><br>(Jointly Administered)<br><br>Adv. Proc. No. 19-_____ (BLS) |

### COMPLAINT FOR AVOIDANCE AND RECOVERY OF PREFERENTIAL AND FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. §§ 544, 547, 548 & 550

Plaintiff Michael Goldberg (the "Plaintiff" or "Trustee"), in his capacity as Liquidating Trustee of the Woodbridge Liquidation Trust, pursuant to the *First Amended Joint Chapter 11 Plan of Liquidation of Woodbridge Group of Companies, LLC and Its Affiliated Debtors* dated August 22, 2018 (the "Plan") of the debtors in the above-captioned cases (the "Debtors"), for his *Complaint for Avoidance and Recovery of Preferential and Fraudulent Transfers Pursuant to 11 U.S.C. §§ 544, 547, 548 & 550* (the "Complaint") against IRA Services Trust Company,

---

[1] The Remaining Debtors and the last four digits of their respective federal tax identification numbers are as follows: Woodbridge Group of Companies, LLC (3603) and Woodbridge Mortgage Investment Fund 1, LLC (0172). The Remaining Debtors' mailing address is 14140 Ventura Boulevard #302, Sherman Oaks, California 91423..

Custodian for the Benefit of James C. Chang and James C. Chang (collectively, "<u>Defendant</u>"),
alleges as follows:

### <u>Nature of the Action</u>

1.     The Plaintiff brings this action against the Defendant to avoid and recover certain
preferential and/or fraudulent transfers that occurred prior to commencement of the Debtors'
bankruptcy cases.

### <u>The Parties</u>

2.     Plaintiff is the duly appointed trustee of the Woodbridge Liquidation Trust (the
"<u>Trust</u>"), successor in interest to the Debtors.  Pursuant to Paragraph 5.4 of the Plan, the
Confirmation Findings (defined below) at paragraphs 13-15, and Article IV of the Liquidating
Trust Agreement, the Trustee has the sole authority to pursue claims transferred to the Trust by
the Debtors through the Plan and to seek any and all related relief.

3.     Upon information and belief, Defendant James C. Chang is an individual, a
resident of the State of California, and a former investor with the Debtors.  Upon information and
belief, Defendant IRA Services Trust Company Trust is a company formed under the laws of the
State of South Dakota.

### <u>Jurisdiction and Venue</u>

4.     The United States Bankruptcy Court for the District of Delaware (the
"<u>Bankruptcy Court</u>") has jurisdiction over this adversary proceeding under the Bankruptcy Code
pursuant to 28 U.S.C. §§ 157(a) and 1334(a).

5.     This proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b)
and the Bankruptcy Court may enter final orders for the matters contained herein.

6.     Pursuant to Local Bankruptcy Rule 7008-1, the Plaintiff affirms his consent to the
entry of final orders or judgments by the Court if it is determined that the Court, absent consent

of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

7.      Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).

8.      This adversary proceeding is commenced pursuant to Rule 7001(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and sections 544, 547, 548 and 550 of the Bankruptcy Code.

### Case Background

9.      Commencing with the first filings on December 4, 2017, and continuing with other filings through March 27, 2018, Debtors Woodbridge Group of Companies, LLC, *et al.*, each commenced a case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Chapter 11 Cases are jointly administered under Case No. 17-12560 (BLS).

10.      The Plan was confirmed on October 26, 2018, and became effective on February 19, 2019.

### Facts

11.      Prior to the commencement of the Chapter 11 Cases, the Debtors operated a fraudulent investment "Ponzi Scheme." In its *Findings of Fact, Conclusions of Law and Order Confirming the First Amended Joint Chapter 11 Plan of Liquidation of Woodbridge Group of Companies, LLC and its Affiliated Debtors,* entered on October 26, 2018 (the "Confirmation Findings"), at paragraph NN, the Bankruptcy Court found as follows:

> NN. **Conduct of a Ponzi Scheme.** The evidence demonstrates, and the Bankruptcy Court hereby finds, that (i) beginning no later than July 2012 through December 1, 2017, Robert H. Shapiro used his web of more than 275 limited liability companies, including the Debtors, to conduct a massive Ponzi scheme raising more than $1.22 billion from over 8,400 unsuspecting investors nationwide; (ii) the Ponzi scheme involved the payment of purported returns to

existing investors from funds contributed by new investors; and (iii) the Ponzi scheme was discovered no later than December 2017.

12.    Through this fraudulent scheme, the Debtors raised over one billion dollars from approximately 10,000 investors as either Noteholders or Unitholders (collectively, "Investors"). Those Investors often placed a substantial percentage of their net worth (including savings and retirement accounts) with the Debtors and now stand to lose a significant portion of their investments and to be delayed in the return of the remaining portion.  The quality of the Investors' lives will likely be substantially and adversely affected by the fraud perpetrated by the Debtors.

13.    Investors were often told that they were investing money to be loaned with respect to particular properties owned by third parties, that those properties were worth substantially more than the loans against the properties, and that they would have the benefit of a stream of payments from these third parties for high-interest loans, protected by security interests and/or mortgages against such properties.  In reality, these statements were lies.  Investors' money was almost never used to make high-interest loans to unrelated, third-party borrowers, there was no stream of payments, Investors' money was commingled and used for an assortment of expenses, including maintaining a lavish lifestyle for Shapiro and his family, brokers' commissions, overhead (largely for selling even more notes and units to investors), and payment of principal and interest to existing investors.  The money that was used to acquire property (almost always owned by a disguised affiliate) cannot be traced to any specific Investor.  These are typical characteristics of Ponzi schemes.

14.    Because the Debtors operated as a Ponzi scheme, obtaining new money from Investors into the Ponzi scheme conferred no net benefit on the Debtors; on the contrary, each new investment was a net negative. Money was siphoned off to pay the expenses described above, so that the Debtors actually received only a fraction of the investment dollars. New money also perpetuated the Ponzi scheme, enabling the Debtors to return fictitious profits to early Investors; in the absence of new investment, the house of cards would fall (as it eventually did). At the same time, each investment created an obligation to return to the defrauded Investor 100% of the investment, such that each new investment increased the Debtors' liabilities and ultimately left them unable to satisfy their aggregate liabilities.

15.    Defendant invested with the Debtors through the purchase of notes and/or units and received principal and interest payments from the Debtors with respect to the investment. Defendant invested in notes and/or units with the Debtors and was paid in full for all investments prior to the Petition Date, including interest, and is thus a "Net Winner."

16.    During the ninety days prior to the Petition Date, the Debtors made payments to or for the benefit of the Defendant, including those identified on Exhibit A attached hereto (collectively, the "Ninety Day Transfers"). Exhibit A sets forth the details of each of the Transfers, including the identity of the transferor Debtor, check or payment number, payment date, clear date, and payment amount. The aggregate amount of the Ninety Day Transfers is not less than $815,265.75.

17.    Although it is possible that some of the Ninety Day Transfers might be subject in whole or in part to defenses under 11 U.S.C. § 547(c), Defendant bears the burden of proof pursuant to 11 U.S.C. § 547(g) to establish any defense(s) under 11 U.S.C. § 547(c).

18.    During the four years prior to the Petition Date, the Debtors made transfers to Defendant for interest on Defendant's investments with the Debtors in an amount not less than $21,276.85 (the "Net Winnings" or "Fraudulent Transfers").  A list identifying the Fraudulent Transfers is attached hereto as Exhibit B and is incorporated herein by reference.

19.    Plaintiff is informed and believes that at least one creditor holding an unsecured claim that is allowable under Section 502 of the Bankruptcy Code or that is not allowable under Section 502(e) of the Bankruptcy Code exists who can avoid the Fraudulent Transfers and/or obligations referred to in this Complaint.  The Plaintiff may assert the rights of such creditors pursuant to Section 544(b) of the Bankruptcy Code.

## FIRST CLAIM FOR RELIEF

### (Avoidance of Preferential Transfers—11 U.S.C. § 547)

20.    Plaintiff realleges and incorporates by reference each and every allegation in the above paragraphs, as though fully set forth at length.

21.    Within the ninety days prior to the Petition Date, the identified Debtor made the Ninety Day Transfers to Defendant in the total amount of $815,265.75, as more specifically described in Exhibit A.

22.    Each of the Ninety Day Transfers to the Defendant was a transfer of property of the identified Debtor.

23.    Each of the Ninety Day Transfers to the Defendant was made to or for the benefit of the Defendant.

24.    The Defendant was a creditor of the identified Debtor (within the meaning of 11 U.S.C. § 110(10)) at the time that each of the Ninety Day Transfers was made or, alternately,

received each of the Ninety Day Transfers for the benefit of a creditor or creditors of the identified Debtor.

25.     Each of the Ninety Day Transfers to the Defendant was made on account of an antecedent debt owed by the identified Debtor to the Defendant before the transfer was made.

26.     Each of the Ninety Day Transfers was made while the identified Debtor was insolvent. The identified Debtor is presumed to be insolvent during the 90 days preceding the Petition Date pursuant to 11 U.S.C. § 547(f).

27.     Each of the Ninety Day Transfers enabled the Defendant to receive more than the Defendant would have received if (i) the transfers and/or payments had not been made, and (ii) the Defendant received payment on account of the debt paid by each of the Transfers to the extent provided by the Bankruptcy Code.

28.     As of the date hereof, the Defendant has not returned any of the Ninety Day Transfers to the Plaintiff.

29.     Plaintiff is entitled to an order and judgment under 11 U.S.C. § 547 that the Ninety Day Transfers are avoided.

## SECOND CLAIM FOR RELIEF

### (Recovery of Property—11 U.S.C. § 550)

30.     Plaintiff realleges and incorporates by reference each and every allegation in the above paragraphs, as though fully set forth at length.

31.     Pursuant to 11 U.S.C. § 550(a), to the extent that a transfer is avoided under 11 U.S.C. § 547, Plaintiff may recover for the benefit of the estate the property transferred or the

value of such property from (a) the initial transferee of such transfer or the entity for whose such

transfer was made or (b) any immediate or mediate transferee of such initial transferee.

32.     Defendant is either the (a) initial transferee of the Transfers, the entity for whose

benefit the Ninety Day Transfers were made, or (b) an immediate or mediate transferee of the

initial transferee.

33.     Subject to the Defendant's potential defenses, Plaintiff is entitled to recover the

value of the Transfers pursuant to 11 U.S.C. § 550(a).

## THIRD CLAIM FOR RELIEF

### (To Avoid Intentionally Fraudulent Transfers under 11 U.S.C. §§ 544(b) and 548(a)(1)(A), and Cal. Civ. Code § 3439, *et seq.*)

34.     Plaintiff realleges and incorporates by reference each and every allegation in the

above paragraphs, as though fully set forth herein.

35.     As the Debtors operated a Ponzi Scheme, applicable law provides that the

Fraudulent Transfers were made to Defendant with an actual intent to hinder, delay, or defraud

creditors of the Debtors.

36.     Of the Fraudulent Transfers identified in <u>Exhibit B</u>, those made within two years

prior to the Petition Date are avoidable pursuant to 11 U.S.C. §548(a)(1)(A) and Cal. Civ. Code

§ 3439, *et seq*, and the Transfers made within four years prior to the Petition Date are avoidable

under 11 U.S.C. §544(b) and Cal. Civ. Code § 3439, *et seq*.  Plaintiff is entitled to an order and

judgment that each of the Fraudulent Transfers that constitutes Net Winnings is avoided.

## FOURTH CLAIM FOR RELIEF

### (Recovery of Property – 11 U.S.C. §§ 544(b) and 550 and Cal. Civ. Code § 3439, *et seq.*)

37.     Plaintiff realleges and incorporates by reference each and every allegation in the

above paragraphs, as though set forth fully herein.

38.     Defendant is the initial transferee of the Fraudulent Transfers, or the immediate or mediate transferee of such initial transferee.

39.     Plaintiff is entitled to avoid the Net Winnings of the Fraudulent Transfers under Sections 544 and 548 of the Bankruptcy Code, and Cal. Civ. Code § 3439, *et seq.*  As Defendant is the initial, immediate, or mediate transferee of Fraudulent Transfers, Plaintiff is entitled to recover for the estate the proceeds or value of the respective Net Winnings pursuant to under 11 U.S.C. §550 and/or Cal. Civ. Code § 3439, *et seq.*

**WHEREFORE,** Plaintiff prays for judgment as follows:

1.     For a determination that each of the Ninety Day Transfers is avoidable as a preferential transfer under Section 547 of the Bankruptcy Code, and that the Plaintiff is entitled to recover the Ninety Day Transfers in the total amount of $815,265.75 under Section 550 of the Bankruptcy Code;

2.     For a determination that each of the Fraudulent Transfers that constitute Net Winnings is avoidable as a fraudulent transfer under Sections 544 and 548 of the Bankruptcy Code and Section 3439, *et seq.,* of the California Civil Code, and that Plaintiff is entitled to recover the Net Winnings in the total amount of $21,276.85 under Section 550 of the Bankruptcy Code and Section 3439, *et seq.,* of the California Civil Code;

3.     For costs of suit incurred herein, including, without limitation, attorneys' fees;

4.     For pre- and post-judgment interest on the judgment amount to the fullest extent allowed by applicable law; and

5.      For such other and further relief as the Court may deem just and proper.

Dated:  October 18, 2019

        */s/ Colin R. Robinson*
        Bradford J. Sandler (DE Bar No. 4142)
        Andrew W. Caine (CA Bar No. 110345)
        Colin R. Robinson (DE Bar No. 5524)
        PACHULSKI STANG ZIEHL & JONES LLP
        919 North Market Street, 17th Floor
        P.O. Box 8705
        Wilmington, DE 19899-8705 (Courier 19801)
        Telephone: (302) 652-4100
        Facsimile: (302) 652-4400
        Email:  bsandler@pszjlaw.com
                acaine@pszjlaw.com
                crobinson@pszjlaw.com

        *Counsel to Plaintiff Michael Goldberg, in his
        capacity as Liquidating Trustee of the Woodbridge
        Liquidation Trust*